**Bernard DORRANCE, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.**

**Appeal No. 83–1175.**

United States Court of Appeals, Federal Circuit.

May 18, 1984.

Alan E. Wolin, Mineola, N.Y., argued for petitioner.

Lorraine B. Halloway, Washington, D.C., argued for respondent, J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, and Sandra Spooner, Washington, D.C., were on the brief.

Before MARKEY, Chief Judge, FRIEDMAN, RICH, SMITH and NIES, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the April 25, 1983, decision of the Merit Systems Protection Board (Board) sustaining the removal of Bernard Dorrance from his position as Air Traffic Control Specialist by the Department of Transportation's Federal Aviation Administration (agency). The bases for the removal were proven charges of striking against the United States and absence without leave. We affirm.

## Background

Dorrance was employed as an air traffic controller at the New York Air Route Traffic Control Center, Ronkonkoma, New York. On August 3, 1981, the Professional Air Traffic Controllers Organization (PATCO) commenced a nation-wide strike against the agency. Dorrance failed to report for duty as scheduled at 3 p.m. on August 3, 1981. By letter of August 6, the Chief of the air traffic center notified Dorrance that he was charged with striking against the United States Government and with being absent from duty without authorization, and was apprised of his proposed dismissal. In a letter of August 10, Dorrance requested an extension of time in which to file a written response to the charges. By separate letter on that date, he also requested certain material relevant to the agency's proposed action, under the Freedom of Information Act. A third letter by Dorrance on August 13 noted that "because of ambiguities in the notice and the statutes that apply, I cannot deny or affirm the charges at this time."

The request for an extension of time was denied by letter of August 12, and, by letter of August 19, the center's Chief, Louis C. Pol, dismissed Dorrance effective August 22, 1981. Dorrance appealed to the Board and, after a hearing, a Presiding Official sustained the agency's removal, as did the Board on petition for review in *Adams et al. v. Department of Transportation* (Docket No. NY075281F0424, April 25, 1983). Dorrance did not deny the charges against him at any stage of these proceedings, nor did he elect to testify during the hearing before the Presiding Official.

More details concerning the air traffic controllers' strike are set forth in related cases decided concurrently herewith: *Schapansky v. Department of Transportation*, 735 F.2d 477 (Fed.Cir.1984); and *Adams v. Department of Transportation*, 735 F.2d 488 (Fed.Cir.1984).

1. 5 U.S.C. § 7703(c) provides in pertinent part:

## Issues

Dorrance challenges the agency's removal action on several grounds, principally, (1) the agency failed to meet its burden of proof that he participated in a strike; (2) the agency erred by invoking the "crime" provision of 5 U.S.C. § 7513(b) to shorten the advance notice period to Dorrance before his dismissal; (3) that his removal does not promote the efficiency of the service; and (4) that the penalty of removal is grossly disproportionate to the nature of the offense. Such issues were raised in *Schapansky*, supra, and Dorrance's appeal on these grounds is rejected for the reasons set forth in *Schapansky*.

■ Dorrance further contends that (5) the Presiding Official erred in drawing a negative inference from Dorrance's failure to testify in his own behalf. This argument is unavailing. Silence added to the sufficiency of the agency's case when it follows the agency's establishment of a prima facie case, as discussed in our decision in *Adams*, supra.

Additional arguments by Dorrance for reversal of the Board's decision are: (6) the Presiding Official improperly relied upon hearsay evidence, i.e., the Time and Attendance Reports of the agency used to corroborate Dorrance's absence from work on August 3, 1981; (7) the harmful effect of consolidating Dorrance's case with those of 63 other air traffic controllers before the Presiding Official; (8) the harmful effect of the agency's denial of Dorrance's request of August 10 for an extension of time; (9) the violation of due process represented by alleged "dilatory" tactics of both the agency and the Presiding Official; and (10) that the agency prevented his return to work.

## OPINION

Initially, we note that our standard of review for decisions of the Board is prescribed in 5 U.S.C. § 7703(c).[1]

(c) In any case filed in the United States Court of Appeals for the Federal Circuit, the

The Presiding Official heard the testimony of Chief Pol, and noted that he identified schedules, logs, and time and attendance records which documented, inter alia, the absence of Dorrance commencing on August 3, 1981. Dorrance contends that the unsupported testimony of the Center Chief is not sufficient to prove that he was striking, and that these various records are hearsay and also ineffective because of evidentiary deficiencies such as a lack of testimony as to their accuracy or the manner in which they were made and maintained.

■■■ As explained in *Schapansky,* proof of a wide-spread strike of general knowledge, together with Dorrance's absence without authorization or explanation during the strike constitutes at least a prima facie case of his participation in the strike. Dorrance neither denied his absence nor the existence of a strike; nor does he argue that he objected to Chief Pol's testimony or documents relied upon therein at the time of the hearing. The Board found that the unrebutted testimony of Chief Pol was sufficient to establish a prima facie case of striking. Furthermore, the documents appear probative and would be competent evidence though hearsay before the Board in any event. *See, e.g., Borninkhof v. Department of Justice,* 5 MSPB 150, 153 (1981); and *Brewer v. United States Postal Service,* 647 F.2d 1093, 1097–98, 227 Ct.Cl. 276 (1981), *cert. den.,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

■■■ Dorrance next claims that the consolidation of his case along with 63 "other appeals on one day" was harmful error, and violated his due process rights to a fair hearing.[2] Dorrance admits that the Presiding Official has discretion to consolidate appeals under 5 U.S.C. § 7701(f); however, he contends that this consolidation "ren-

dered the hearing a sham" and "chilled and reduced his opportunity as a matter of law, to introduce evidence in his own defense." This contention is at best disingenuous because Dorrance did not object to the consolidation until now, and because he made no attempt to introduce evidence in his own defense. The consolidated appeals involved substantially the same issues and questions of fact and the same counsel represented all of the appellants. Furthermore, the one controller who did present an individual defense, Mr. Copping, was singled out for separate treatment in the Presiding Official's decision. Dorrance has not shown any harm to his opportunity to defend himself nor that this consolidation was an abuse of the Presiding Official's discretion.

The agency denied a request by Dorrance in his letter of August 10, 1981, for an extension of the time in which to respond to the charges set forth in Chief Pol's letter of August 6, 1981. This request was based on three reasons: (1) the agency improperly decreased the statutory thirty days advance notice of removal on the ground that he had committed a crime; (2) even if the crime exception is invoked, he is entitled to a reasonable time to reply and the seven days granted was not reasonable; and (3) he needed time to view materials that the agency relied upon to support its proposed removal as well as other documents requested under the Freedom of Information Act (FOIA). The first two contentions were rejected in *Schapansky* and *Adams,* supra. In its letter of August 12, the agency rejected the request for extension but addressed only part of Dorrance's third reason, noting that the material requested under the FOIA had not been relied upon by the agency for the proposed action.

■■■ On appeal here, Dorrance argues that extension requests "should be liberally

---

court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
  (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
  (2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence;
....

**2.** 5 U.S.C. § 7701(c)(2) provides that the Board may not sustain an agency decision "if the employee ... (a) shows harmful error in the application of the agency's procedures in arriving at such decision; ...."

granted," and that had "he received the extension of time, he very well may have replied to the proposed dismissal." Dorrance thus contends that lack of documents and lack of response time precluded an opportunity to make a meaningful response. The Board ruled that the wording of the August 3 notice of proposed dismissal did not lack sufficient particularity as to the charges against him. We agree. *See Anderson v. Department of Transportation,* 735 F.2d 537 (Fed.Cir.1984). Dorrance attributes harmful effect to this denial, but he has not shown that the agency's decision precluded a meaningful response to the charges. The mere allegation of harm is unpersuasive.

■ Dorrance contends that the agency engaged in dilatory tactics during the course of proceedings, including failure to meet certain deadlines and to respond to certain of his motions and requests, and that this violated his due process rights. Indeed, Dorrance moved for sanctions against the agency, but these were not granted by the Presiding Official. Dorrance contends that it was "a gross perversion of justice for, on [the] one hand to hold that petitioner could not have more than seven days to respond to the charges; but on the other hand, to essentially give respondent all the time it required ...." The Board held that, absent a showing that the Presiding Official had abused his discretion, his determinations will not be found to constitute reversible error. To be "harmful error" necessitating our reversal of the Board, the error must substantially impair an employee's rights. *Brewer,* supra; *Shaw v. United States Postal Service,* 697 F.2d 1078 (Fed.Cir.1983).

■ The Board considered the special circumstances of this strike in which approximately 11,000 related air traffic controller "appeals can and should be recognized." Notwithstanding agency delays the Board concluded that the Presiding Official's management of the case and the agency's conduct were not shown to have caused any "prejudicial harm to appellants' presentation of their cases." On appeal to this court, Dorrance has demonstrated no such harm to his rights, and we find no deprivation of due process.

■ Finally, Dorrance urges reversal of the Board on the ground that he was effectively "locked out" of the Air Route Traffic Control Center and prevented from returning to work. This contention is based both on an announcement by Chief Pol over the public address system on August 5, 1981, at 11 a.m., that any air traffic controllers then outside the facility who wanted to report for work would be escorted into the facility, and upon President Reagan's announcement, 48 hours earlier, that controllers who had not reported for work within 48 hours would be fired. Chief Pol testified that the gates were not locked at the time of the announcement. The Board found that, "Viewed in a light most favorable to appellants, the most that can be found from these circumstances is that anyone within hearing distance of the announcement (which appellants do not claim to have been) was specifically informed not that he or she could not return to work, but rather that he or she could."

The Board also found that it was incumbent upon the individuals removed from service to seek "any necessary clarification" as to the actual time of the deadline for their return to work. Additionally, the Board found that any perceived futility in attempting to return to work did not relieve them from attempting to contact the facility. The Board's holding that Chief Pol's statements did not serve to "lock out" Dorrance was supported by substantial evidence.

*Summary*

We hold that the agency's procedures were in accordance with the law and that its actions and those of the Presiding Official involved no error. Accordingly, for reasons stated herein and in the related cases decided today, the Board's decision sustaining the August 22, 1981, permanent removal of Dorrance by the agency from his position as Air Traffic Control Special-

ist at the New York Air Route Traffic Control Center is *affirmed*.

AFFIRMED.